# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LYNDON DUBOSE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action: 2:07-CV-00862-VEH |
| | ) | |
| UNITED STATES STEEL | ) | |
| CORPORATION, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Lyndon Dubose ("Dubose") brings this action *pro se* against his former employer, United States Steel Corporation (hereinafter "USS"), alleging race discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), and 42 U.S.C. § 1981.[1]

USS has filed an unopposed motion for summary judgment on all of Dubose's

---

[1] The Eleventh Circuit Court has instructed that claims brought under 42 U.S.C. §§ 1981 and 1983 are analyzed under the same framework as Title VII disparate treatment claims. *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical. *Lincoln v. Board of Regents*, 697 F.2d 928, 939 (11th Cir.1983)*, cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983)*. A plaintiff asserting either claim must prove intentional discrimination. *Id.* Therefore, we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.").

claims. (doc. 19). For the reasons set forth in this opinion, the motion is due to be **GRANTED**.

## FACTUAL HISTORY[2]

Dubose entered employment with USS, a steel producer and manufacturer headquartered in Pittsburgh, Pennsylvania, in 1996. (Pl. Dep. pp. 30-31). Before his termination in 2006, Dubose worked in various positions, including production and maintenance worker, for USS at its Fairfield Works in Birmingham, Alabama.[3] (Id. pp. 31-37). He also served as the Safety Chairman of the United Steel Workers of America ("USWA"), Local Union 2122. (Id. pp. 51, 57, 60).

On January 31-February 1, 2006, Dubose attended a joint union-management safety conference in Pittsburgh, Pennsylvania, with James Bates, president of the

---

[2] These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as "facts" in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted). Facts are undisputed unless otherwise noted. Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

The court notes that its ordinary preference is to refer to "Admitted Facts" designated by the parties on a motion for summary judgment. Because Dubose has not filed a brief in opposition to summary judgment, references to undisputed facts are made directly to the record and not to "admitted facts."

[3] Dubose obtained at least three of his four positions at USS by promotion. (Pl. Dep. pg. 35). Each of these promotions were received after he was given necessary training opportunities. (Id. pg. 36).

2

USWA Local Union 2122.[4]  (Pl. Dep. Pp. 62, 64, 116-121).  USS had agreed to reimburse Dubose's and Bates's travel expenses for attending the conference.  (Id. pp. 257-58, 260).  Unbeknownst to USS, Bates and Dubose traveled to the conference together and shared a hotel room, dividing all travel expenses between them.  (Id. pp. 125, 131-32, 135-146).

Immediately following the conference, Bates submitted a statement of travel expenses to USS, which was approved by Bernard Borman, Manager of Employee Relations at USS's Fairfield Works.  (Borman Dep. pp. 8, 20-22, 59-61).  In the expense statement, Bates requested reimbursement for 1,527.2 miles and a three-day hotel expense.  (doc. 20, exh. 7).

In March 2006, Dubose submitted an expense statement for the conference. (Pl. Dep. pp. 147-49; doc. 20, exh. 8).  In it, he sought reimbursement for virtually the same expenses incurred by Bates, including 1,512 miles and a three-day hotel bill. (Id.).

After meeting with both gentlemen, Borman concluded that Dubose and Bates claimed to have traveled and lodged separately when, in fact, they had traveled and roomed together.  (Borman Dep. pp. 101, 103, 112-15).  On April 12, 2005, Bates and

---

[4]  While the location of the conference, across the street from USS's Pittsburgh headquarters, suggests that the conference was sponsored by USS, the record does not confirm this.  (Pl. Dep. pg. 137).

Dubose were placed on a five-day suspension subject to termination for attempting to defraud USS, pending the outcome of separate factfinding hearings as provided by the Basic Labor Agreement between USS and the USWA, Local 2122. (Pl. Dep. pp. 173-74, 247-48; Borman Dep. pp. 103, 114-15; doc. 20 exh. 13).

At his hearing held April 13, 2006, Dubose confessed that he had lied to USS about traveling and lodging separately from Bates. (Borman Dep. pp. 101, 107, 112-13, 115, 122). Bates and Dubose were terminated on April 18, 2006. (Pl. Dep. pp. 173-75; Borman Dep. pg. 103; doc. 20 exh. 16).

## PROCEDURAL HISTORY

After unsuccessfully pursuing his remedies through arbitration and grievances with the National Labor Relations Board, the Occupational Safety and Health Administration, and the Equal Employment Opportunity Commission, Dubose filed his Complaint in this action on May 8, 2007.[5] (doc. 1). In his Complaint, Dubose asserts claims of disparate treatment, racial harassment, and retaliation in violation

---

[5] Pursuant to the Basic Labor Agreement between the union and USS, Dubose submitted to binding arbitration, on July 13, 2006, a grievance following his termination. (doc. 20 exh. 10). On August 11, 2006, Dubose filed an unfair labor practice charge against USWA, Local 2122 with the National Labor Relations Board (Id., exh. 18), in which he claimed that the union had failed to represent him properly during his termination proceedings. The charge was dismissed as unsupported by relevant evidence on February 20, 2007. (Id.). Dubose later filed a complaint with OSHA about his termination, which was also dismissed on grounds that he had attempted to commit fraud against USS. (Pl. Dep. pp. 213). Finally, on May 3, 2006, Dubose filed an charge of discrimination against USS (doc. 20 exh. 22), which was dismissed on February 7, 2007, for failure to establish a Title VII violation. (Id.).

of Title VII and 42 U.S.C. § 1981.  USS answered the Complaint on June 8, 2007. (doc. 7).   On February 28, 2008, USS filed the pending motion for summary judgment, to which Dubose has not responded.   The motion is now subject to the court's review.

## STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  All reasonable doubts about the facts and all justiciable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was based on intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a

5

disparate treatment cases, *McDonnell-Douglas Corp. V. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas*/*Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a prima facie case of discrimination. Once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though the defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell-Douglas Corp.*, 411 U.S. at 802-05, 93 S.Ct. at 1824-27; *Burdine*, 450 U.S. at 252-54, 101 S.Ct. At 1093-95; *Desert Palace*, 529 U.S. at 101-02, 123 S.Ct. At 2155-56.

Where a motion for summary judgment is unopposed, summary judgment is

appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added). Thus, the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. *See Dunlap v. Transamerica Accidental Live Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam). The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. *Id.* At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact"). In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must "indicate that the merits of the motion were addressed." *Dunlap*, 858 F.2d at 632.

## ANALYSIS

### 1.     Disparate Treatment

In his Complaint, Dubose alleges that he was subject to race discrimination in his employment with USS.  He offers no direct evidence of discrimination, and must therefore support his case through circumstantial evidence under the *McDonnell-Douglas* analytical framework described *supra*.

To establish a prima facie case of disparate treatment based on his race, Dubose must present evidence that (1) he belongs to a racial minority; (2) he was subjected to an adverse employment action; (3) USS treated him less favorably than similarly situated white employees; and (4) he was qualified to perform his job.  *Merriweather v. Alabama Dept. of Public Safety*, 17 F.Supp.2d 1260, 1267 (M.D.Ala. 1998), *aff'd*, 199 F.3d 443 (11th Cir. 1999), *citing Jones v. Carraway Medical Ctr.*, 137 F.3d 1306, 1310 (11th Cir. 1998), *superceded in non-relevant part on denial of reh'g*, 151 F.3d 1321 (11th Cir. 1998).  *See also McDonnell-Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

The facts alleged in support of this claim are as follows:  (1) Dubose was "denied positions" because of his race (Compl., doc. 1 ¶ 7), (2) he was terminated because of his race (Id. ¶ 9), (3) he was denied training and overtime opportunities because of his race (Pl. Dep. pg. 243), (4) as the first black Safety Chairman at USS,

8

he was denied access to certain work areas as he attempted to fulfill his duties as chairman (Id. pg. 245), and (5) he was "singled out" for more physically strenuous work than more junior white employees (Id. pg. 246).

The court accepts that Dubose belongs to a protected class based on his race. Second, his allegations of being denied training, overtime, promotions, and, eventually, being terminated, are all adverse employment actions. Finally, USS does not question whether Dubose was qualified to perform his job.

However, at his deposition, Dubose could not identify a single white employee who was treated more favorably than himself. He described a "black and white issue" that "was heavily at the sheet mill." (Pl. Dep. pg. 243). He attempted to specify that "[a]s far as training on certain equipment, the step-ups on the jobs, like foremans, they would come and ask less tenured employees that were Caucasians over the more senior employees that were black. [ ] [T]hey would get the overtime rather than a senior employee. . . ." (Id.). Beyond this, Dubose did not identify a white employee who was afforded more overtime, training, or promotional opportunities than a more senior black employee, but only testified that all employees who were given preferential treatment were Caucasian.[6] (Id. pp. 274-

---

[6] Dubose did point to one white, less senior employee named Darlene Seiffert, who was awarded a promotion for which he had placed a bid. (Pl. Dep. pg. 240). He testified that his name was inexplicably removed from the list of bidders for the position, which might explain

75).  Although he asserts that he was denied the same access to the sheet mill during

safety inspections as past white safety chairmen, Dubose offers no evidence to

support this claim.  Given his three promotions and corresponding training, the court

finds no basis to conclude that Dubose was treated less favorably than other

employees.

    As to his termination, the Eleventh Circuit has explained that

> [i]n determining whether employees are similarly situated for purposes
> of establishing a prima facie case, it is necessary to consider whether the
> employees are involved in or accused of the same or similar conduct and
> are disciplined in different ways. . . .  In order to satisfy the similar
> offenses prong, the comparator's misconduct must be nearly identical to
> the plaintiff's in order "to prevent courts from second-guessing
> employers' reasonable decisions and confusing apples with oranges."

*Silvera*, 244 F.3d at 1259, quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d

---

why he was not awarded the promotion.  (Id.).  After filing a union grievance, which was also
inexplicably withdrawn from consideration by USS, Dubose testified that USS created a second
position identical to the one Ms. Seiffert received that was awarded to him.  (Id. pp. 240-242).

Aside from this testimony, there is no evidence that Ms. Seiffert actually was less senior to
Dubose or was similarly situated to him in "all relevant aspects."  *See Silvera v. Orange County
School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) ("[i]n order to meet the comparability
requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to
the non-minority employee").

Furthermore, Dubose testified that he believed he was passed over for promotions in favor of
other employees who "weren't raising all these safety related concerns" inside the sheet mill, in
contrast to Dubose, who had apparently become well known for reporting USS to OSHA for
safety violations.  (Pl. Dep. pp. 101-02, 104, 107, 110-12).  Thus, Dubose appears to testify that
any differential treatment he received from USS was due to his complaints about safety
violations, not his race.

1306, 1311 (11th Cir. 1998), *opinion modified by* 151 F.3d 1321 (11th Cir.1998);

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997); *Maniccia v. Brown*, 171 F.3d

1364, 1368-69 (11th Cir.1999).

In *Maniccia*, the Eleventh Circuit instructed that

[i]n evaluating whether employees are similarly situated for purposes of establishing a prima facie case of disparate treatment, . . . [t]he most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishment imposed. . . . We require that the quantity and quality of the comparator's misconduct be nearly identical. . . .

171 F.3d at 1368.

Dubose testified that at least three white USS employees have submitted false

expense statements to USS and were not terminated. (Pl. Dep. pg. 275). However,

he offered evidence as to only one employee, Fred Gibson, Jr., who allegedly

submitted a check stub to the USWA, Local 2122.[7] (Id. pp. 283-84). According to

Dubose, the check stub proves that Gibson also defrauded USS and was not

terminated. (Id. pg. 284). This evidence, by itself, is insufficient to demonstrate that

Gibson actually defrauded or attempted to defraud USS and, even if Gibson did so

attempt to defraud (or defrauded) USS, Dubose has not presented evidence that USS

---

[7] A copy of this check stub was not found in the record and, apparently, was not produced by Dubose at his deposition. The only evidence relating to the check stub is Dubose's belief that Fred Gibson submitted it to the union for reimbursement of travel expenses. (Pl. Dep. pg. 284).

knew about the alleged attempt or fraud.

With no specific evidence of any white, similarly situated comparator to consider, the court cannot conclude that Dubose has satisfied this element of his claim.

The Eleventh Circuit Court has instructed that

[i]f a prima facie case has been shown, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions.

*Silvera*, 244 F.3d at 1258, quoting *McDonnell-Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, and citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

USS argues that it awards promotions to employees based on seniority in accordance with its Basic Labor Agreement with the USWA, Local 2122.

As to his termination, USS argues that Dubose's attempt to defraud his employer is a legitimate, non-discriminatory reason for plaintiff's termination of employment. *See Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 476 (5th Cir. 2005) (suspicion of theft considered a legitimate, non-discriminatory reason), *cert. denied*, 546 U.S. 1090, 126 S.Ct. 1027, 163 L.Ed.2d 855 (2006).

The court finds no evidence that these articulated reasons are a pretext for race

discrimination.  The court acknowledges that, based on Dubose's testimony, USS appeared impatient to terminate him because of his union activity, but not because of his race.  Dubose explained repeatedly that he believed USS wanted to "be rid of him" because he had reported the company to OSHA for safety violations.  (Pl. Dep. pp. 101-02, 104, 107, 110-12).  The court finds no evidence that Dubose's termination had anything to do with his race.

Dubose has presented insufficient evidence that he was discriminated against because of his race while employed by USS.  Accordingly, USS is entitled to summary judgment at to this claim.

### 2.    Hostile Work Environment

Dubose also alleges that he suffered racial harassment while employed by USS. He offers the following facts to support this claim:

(1)    On one occasion, his then-supervisor, Bert Martin, spit in Dubose's lunch (Pl. Dep. pp. 220-21);

(2)    Scott Tucker, the maintenance supervisor, said "black" in front of Dubose (Id. pp. 222-24);

(3)    Terry Todd, another supervisor, said about Dubose "I'm tired of this black SOB," followed by "I'm tired of this shit" (Id. pp. 225-26);

(4)    Coleman Kelly, also a member of management at USS, told Dubose that

13

he "is tired of this BS," and that "all you black guys are saying that all of this is racial issues"[8] (Id. pp. 227-28);

(5)     Kelly also resisted Dubose's appointment by the union to safety chairman, saying to a white employee "why don't you take it because we don't want a black man in there" (Id. pg. 229);

(6)     Raymond League, Dubose's union representative, spoke to Bates about Dubose, saying "that SOB is going to get fired if he don't back up on safety" (Id. pp. 270, 280);

(7)     On two occasions, Dubose saw a noose hanging inside the sheet mill (Id. pp. 234-38);

(8)     A note saying "you black ass N, you think you are smart," was placed in Dubose's locker (Id. pg. 230); and

(9)     Dubose saw written "The Big Fat One" on a piece of cardboard in the sheet mill (Id. pp. 232-33).

A claim of hostile work environment is established under Title VII upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[8]  Kelly appeared to be referring to "[t]he things that were going on in the mill and the things that [Dubose] had been writing up on the safety agenda," an apparent reference to Dubose's many reports of safety violations by USS.  (Pl. Dep. pg. 228).

employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

To prevail on this claim, Dubose  must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment was sufficiently severe and pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) USS is responsible for such environment under either a theory of vicarious or direct liability.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).  USS does not dispute that Dubose belongs to a protected group based on his race, or that he was subjected to unwelcome harassment.

The court agrees with USS, however, that some of the conduct alleged was not based on Dubose's race.  Neither Bert Martin's spitting in Dubose's lunch[9], nor Raymond League's statement that Dubose would "get fired" bears any reference to Dubose's race.  The cardboard note saying "The Big Fat One" did not refer to Dubose

---

[9]  Dubose testified that the only reason he believed Martin spit into his lunch was because he "was the only black person in there at the time."  (Pl. Dep. pg. 221).  After he complained to Martin about it, Martin "made a slur."  (Id. pg. 222).  Dubose did not report this to anyone else at USS.  (Id.).

15

or to a member of any particular race.[10]  The statements and conduct must be of a racial nature "before they are considered in determining whether the severe or pervasive requirement is met."  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).  "Innocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party, . . . are not counted."  *Id.*  Thus, the court will consider only the comments by Scott Tucker, Terry Todd, and Coleman Kelly, as well as the two hanging nooses and the note in Dubose's locker as evidence in support of Dubose's racial harassment claim.

Considering the alleged conduct in its totality, the court cannot conclude that it is either so severe or so pervasive as to alter the terms or conditions of Dubose's employment.  The Eleventh Circuit has instructed that

---

[10]  Dubose testified that

A:  I don't know exactly what [the cardboard note] is about, but it was directed to, I think, Ms. Irene Scott because she is – forgive my intentions, but she is big butt.  And that's the way she took it, and it was – she got real upset about it.

Q:  Was that directed to you?

******

A:  The big fat one?  It was directed to her.

Q:  Okay.  Is that what you concluded?

A:  Well, that's what everyone else concluded.

Q:  But how was that racial in nature?

A:  How was that – I can't explain how that was racial.

(Pl. Dep. pp. 233-34).

16

>[e]stablishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. . . . "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"

*Mendoza*, 195 F.3d at 1246, *quoting Harris*, 510 U.S. at 21-22, 114 S.Ct. 367; *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.E.2d 201 (1998).

The court accepts that Dubose subjectively perceived the harassment to be severe and pervasive. To determine whether the harassment objectively altered the terms or conditions of Chapman's employment, the court must consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with Dubose's job performance. *Mendoza*, 195 F.3d at 1246, *citing Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997), and *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. Although the dates and times of when the conduct occurred are unclear, it is clear that the harassment was episodic and infrequent in the context of Dubose's ten-year employment with USS. While the comments, the note in his locker, and the hanging nooses are offensive, they were neither physically threatening

nor humiliating to Dubose or anyone else, and there is no evidence that they unreasonably interfered with Dubose's job performance. Taken as a whole, the conduct alleged was not objectively severe.

Finally, Dubose did not report much of the harassment to USS. The only conduct he appears to have reported to USS was one of the two hanging-noose incidents and the note in his locker. (Pl. Dep. pp. 232, 236). The other conduct was either reported only to union officials or not reported at all. (Id. pp. 222, 224, 227, 230, 237). Dubose testified that he saw no point in complaining to USS about the harassment because he believed it would be "swept under the rug" (Id. pg. 237), but given that he reported only two out of nine alleged incidents to USS management – one of which was addressed immediately[11] – the basis for this statement is unclear.

### 3.    Retaliation

Dubose finally alleges that USS retaliated against him for engaging in "protected activity" by denying him promotions and by terminating him. (Compl., doc. 1 ¶ 16).

The Eleventh Circuit has recognized that retaliation is a separate violation of Title VII. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).

---

[11]  Dubose testified that the noose was removed "immediately" after it was reported. (Pl. Dep. pg. 236).

"To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to [his] protest, so long as [he] had a reasonable good faith belief that the discrimination existed." *Id., quoting Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994), and *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989).

To establish a prima facie case of retaliation under Title VII, Dubose must show that: (1) he participated in a Title VII-protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir.2002); *Lucas v. Grainger, Inc.*, 257 F.3d 1249, 1260-61 (11th Cir.2001).

Although USS argues that Dubose did not engage in a Title-VII protected activity, the court disagrees.  In February 2004, Dubose found the note in his locker described *supra*.  (Pl. Dep. pg. 230).  He reported it to Kevin Henson, an area manager who appears to have occasionally supervised Dubose, who told Dubose he would "take care of it." (Id. pg. 232).  According to Dubose, neither Henson nor any other member of management took any action in response to his complaint.  (Id.).  Dubose suspected that Terry Todd had placed the note in his locker, though he

admitted he did not know who wrote it and did not recognize its handwriting.  (Id.).

Dubose also complained about being denied various promotions.  He testified that he filed two "civil rights grievances" during his employment with USS, but he could not specify when he filed them.[12]  (Id. pg. 242).

The court accepts, therefore, that Dubose has engaged in protected activities. USS does not dispute that Dubose suffered adverse employment actions via the denial of promotions or his termination.

However, the court cannot conclude that these adverse employment actions are causally connected to his complaints.  With no other evidence of a connection, the court may look to temporal proximity to satisfy this element of his claim.  To the extent that it does so, the record must demonstrate that the temporal proximity is "very close."  *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001).  "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (four-month gap between protected

---

[12]  It is unclear whether these grievances were filed internally, through the union, or with the EEOC.  Dubose claims to have participated in grievance meetings with USS management, suggesting that his complaints were filed with either USS or the USWA, Local 2122.  (Pl. Dep. pg. 271).

activity and adverse action insufficient to show "very close" temporal proximity).

As stated previously, Dubose could not specify when he filed his civil rights grievances, but he did testify that he filed them when he was working as a crane operator. (Id. pp. 242-43). He then received two promotions, the second to a position as an entry end operator, which he held for approximately one year before he was terminated. Thus, at least one year passed between his protected activities and his termination, which would suggest that the two events are not connected.

As to the denial of promotions, Dubose offers no evidence to indicate when these occurred, or how closely in time they occurred compared with his complaints. Thus, the court cannot find that Dubose's complaints are causally connected to the denial of any promotions. In fact, the court is at a loss as to why Dubose believes he was denied any promotions in retaliation for complaining about race discrimination, as he received two of his three promotions after he filed his civil rights grievances. (Id. pp. 34-36, 242).

Dubose has failed to present evidence of a causal connection between his protected activity and the adverse employment actions he suffered. Therefore, the court finds that USS is entitled to summary judgment on this claim.

## CONCLUSION

After reviewing the evidence in its entirety, the court finds no genuine issue of

material fact sufficient for any of Dubose's claims to survive summary judgment.

Dubose has failed to present a prima facie case of disparate treatment, hostile work

environment, and retaliation.  Accordingly, USS's motion for summary judgment is

due to be **GRANTED**.  A separate Order will be entered.

      **DONE** and **ORDERED** this 30th day of June, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge